UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2019 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 19 CR 00761 -MWF |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 2320(a): Conspiracy to Traffic in Counterfeit Goods and Labels; 18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud and Mail Fraud; 18 U.S.C. § 1956(h): Conspiracy to Engage in Money Laundering; 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and (2), 2323(b)and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| ZOULIN CAI, aka "Zou Lin Cai," aka "Lin Cai," aka "Allen Cai," | |
| Defendant. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A.   Defendant and Unindicted Co-Conspirators

1.   Defendant ZOULIN CAI, also known as ("aka") "Zou Lin Cai," aka "Lin Cai," aka "Allen Cai" ("CAI"), was a Chinese citizen who resided in Los Angeles County, California, starting on or about August 21, 2012.  Prior to arriving in the United States, defendant CAI incorporated "Electronic Mall Inc." as a California corporation on December 9, 2011.  At that point and after his arrival in the

United States, defendant CAI was employed by Shenzhen Theseus

Technology Co., Ltd., which was also known as "Theseus Technology

Co., Ltd" and "Everlasting Energy Co., Ltd." ("Theseus Technology"),

a Chinese company.

2.    Unindicted co-coconspirator ("UICC") #1 was a Chinese

citizen and relative of defendant CAI, who resided in China.  UICC #1

was a senior executive of Theseus Technology.

3.    UICC #2 was a Chinese citizen and relative of defendant

CAI, who resided in China.

4.    UICC #3 and UICC #4 were Chinese citizens, who were

believed to be relatives of defendant CAI.  UICC #3 and UICC #4 were

employed by Theseus Technology, and resided in China.

5.    UICC #5 was a Chinese citizen and relative of defendant

CAI, who resided in China.

6.    UICC #6 was a Chinese citizen who resided in China.  UICC

#6 was employed by Theseus Technology.

7.    UICC #7 was a Chinese citizen who resided in the United

States starting in 2011.

B.    Theseus Technology

8.    Theseus Technology manufactured counterfeit batteries,

including batteries for laptop computers, which UICC #1 and defendant

CAI, and their co-conspirators, would then export from China to the

United States.  They then sold and shipped the counterfeit batteries

to individual purchasers, using the business names "3C Supply Inc.,"

"Cycle Technology Inc.," "E-Family USA Inc.," "Electronic Mall Inc.,"

"E-Mall International Inc.," "Everlast Group Inc.," "Green Tech

International Group Inc.," "Lelly Q Inc.," "Nana Inc.," and "Wiimart

Inc."  UICC #1 and defendant CAI, and their co-conspirators, falsely

1  and fraudulently advertised the counterfeit batteries for sale via
2  various storefronts, such as eBay and Amazon, under these and other
3  business names, and then shipped the counterfeit batteries to
4  individual retail purchasers.

5      9.    From at least March 23, 2014 through late-2016, defendant
6  CAI imported, sold, and shipped batteries from a warehouse at 14839
7  Proctor Ave., Unit B, in La Puente, California, which was
8  alternatively referred to as 14839 Proctor Ave., Unit B, City of
9  Industry, California.  From late-2016 through December 17, 2019,
10 defendant CAI imported, sold, and shipped batteries from a warehouse
11 at 13725 Proctor Ave., Unit B, in La Puente, California, which was
12 alternatively referred to as 13725 Proctor Ave., Unit B, City of
13 Industry, California.  Each location is referred to herein as
14 "defendant CAI's warehouse."

15 C.   Bank Accounts

16     10.   Defendant CAI maintained and used business bank accounts at
17 J.P. Morgan Chase N.A. ("Chase"), held in San Marino, California,
18 within the Central District of California, in the following names:

19          a.   an account ending in 3772, doing business as ("dba")
20 "3C Supply Inc.";

21          b.   an account ending in 6821, dba "Cycle Technology
22 Inc.";

23          c.   an account ending in 1828, dba "Electronic Mall Inc.";

24          d.   an account ending in 0978, dba "Everlast Group Inc.";

25          e.   an account ending in 5822, dba "Green Tech
26 International Group Inc.";

27          f.   an account ending in 7213, dba "Lelly Q"; and

28

1    g.    an account ending in 1198, dba "Nana Inc."   These

2 accounts are collectively referred to herein as "defendant CAI's

3 Chase Business Accounts."

4        11.    Defendant CAI and UICC #5 maintained and used a business

5 bank account at Chase ending in 9983, in the name of UICC #5, dba

6 "Wiimart Inc.," held in San Marino, California, within the Central

7 District of California.

8        12.    UICC #1 and UICC #3 maintained and used a business bank

9 account at Bank of America, N.A. ("BOA") ending in 7065, in the names

10 of UICC #1 and UICC #3, dba "E-Family USA Inc.," held in San Gabriel,

11 California, within the Central District of California.

12 D.    Infringed Trademarks

13        13.    A "trademark" is a word, phrase, symbol, or design, or a

14 combination thereof, which identifies and distinguishes the source of

15 the goods of one particular manufacturer from those of other

16 manufacturers.   A trademark is often a valuable asset, equated with

17 the "goodwill" of a business organization, which can influence

18 consumers in purchasing decisions.   A "word mark," "standard

19 character mark," "design mark," and "mark drawing" are types of

20 trademarks.   Trademarks are registered for use in connection with

21 particular types of goods or services.

22        14.    A trademark serves a variety of purposes.   First, it avoids

23 product confusion by allowing consumers to have confidence that two

24 products for sale bearing the identical trademark were manufactured

25 by the same company and will be of the same quality.   Second, it

26 permits consumers to make an informed choice to purchase a name-brand

27 good based upon past experience, word-of-mouth, brand loyalty, and

28 advertising impact.   Third, it enables consumers who experience a

problem with the name-brand product they have purchased to seek recourse through the actual manufacturer by returning the goods to the seller or seeking warranty or other recourse through the manufacturer. Fourth, it allows the trademark owner to distinguish and protect its products by giving that company exclusive rights as the trademark owner. This permits the legitimate trademark owner to recoup investments of time, money, labor, and creativity and to profit from its endeavors in bringing a particular product to market.

15. A "certification mark" is a word, phrase, symbol, or design, or a combination thereof, used to certify regional origin or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of goods or services, or that the work or labor on the goods or services was performed by members of a union or other organization. A certification mark, therefore, serves a similar purpose as a trademark: a certification mark indicates that authorized persons manufacture the products in accordance with the mark-holder's processes, thereby assuring consumers of the quality of the product.

16. A counterfeit mark is: (a) a spurious mark that is used in connection with trafficking in goods; (b) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the U.S. Patent and Trademark Office, and in use, whether or not the defendant knows such mark was so registered; (c) that is applied to or used in connection with the goods or services for which the mark was registered; and (d) the use of which is likely to cause confusion, to cause mistake, or to deceive.

17.   Apple Inc. ("Apple"), Dell Inc. ("Dell"), Hewlett-Packard Company ("HP"), and Toshiba Corporation ("Toshiba") were all companies that manufactured and sold batteries for laptop computers. The U.S. Patent and Trademark Office had registered, on its principal register, trademarks for each company for use in connection with batteries, battery chargers, and/or computer hardware, including the following trademarks described and depicted below, all of which were in use at times relevant to this Indictment:

a.   Trademark number 2,715,578, registered by Apple for the Apple logo design mark;



b.   Trademark number 3,928,818, registered by Apple for the Apple standard character mark;

APPLE

c.   Trademark number 3,222,089, registered by Apple for the MacBook standard character mark;

MACBOOK

d.   Trademark number 74,250,269, registered by Dell for the Dell logo design mark;

e.    Trademark number 88,404,851, registered by HP for the HP logo design mark; and



f.    Trademark number 1,405,380, registered by Toshiba for the Toshiba logo design mark.



18.   UL LLC ("UL") was a global safety consulting and certification company, which conducts safety analyses of electrical equipment.  The U.S. Patent and Trademark Office had registered, on its principal register, certification marks for UL for use in connection with electrical equipment, usually of a voltage not exceeding 600 V, including the following certification marks described and depicted below, all of which were in use at times relevant to this Indictment:

a.    Certification mark number 2,391,140 registered by UL for the "UL in a Circle" logo design mark; and



b.    Certification mark number 1,123,070, registered by UL for the "Reverse UR" logo design mark.

19.   The counterfeit batteries for laptop computers that UICC #1 and defendant CAI manufactured, imported, sold, and shipped were batteries bearing one or more counterfeit marks, to wit, marks identical with or substantially indistinguishable from one or more of the above-described trademarks/certification marks registered by Apple, Dell, HP, Toshiba, and UL.  The counterfeit marks were each likely to cause confusion, to cause mistake, and to deceive.

20.   Apple, Dell, HP, Toshiba, and UL did not ship labels for laptop batteries bearing their trademarks/certification marks separately from laptop batteries to which the labels would be applied.  In other words, labels bearing Apple, Dell, HP, Toshiba, and UL marks that were imported or sold separately from laptop batteries were counterfeit.

21.   Neither defendant CAI nor his co-conspirators, nor their businesses, were authorized to manufacture, import, sell, or distribute Apple, Dell, HP, or Toshiba batteries for laptop computers.

E.   Dangers of Counterfeit Lithium-Ion Laptop Batteries

22.   Counterfeit lithium-ion batteries pose significant safety risks.  While even non-counterfeit lithium-ion batteries are highly flammable and capable of ignition, counterfeit lithium-ion laptop batteries -- including those manufactured, imported, sold, and shipped by UICC #1 and defendant CAI, and their co-conspirators -- frequently lacked required internal safeguards.  The counterfeit lithium-ion laptop batteries manufactured, imported, sold, and shipped by UICC #1 and defendant CAI, and their co-conspirators, therefore created a significant risk of fire and explosion, and danger to human life and safety.

F.    <u>Fraud Victims</u>

    23.   Victims M.O., N.H., F.R., D.A., and C.F. each were defrauded through purchases of one or more batteries from eBay storefronts, which counterfeit batteries were supplied by defendant CAI, and his co-conspirators.  Victims M.O., F.R., D.A., and C.F. lived in the United States, outside the state of California.  Victim N.H. lived in the State of California, outside the Central District of California.

COUNT ONE

[18 U.S.C. § 2320(a)]

24.   The Grand Jury re-alleges and incorporates paragraphs 1 through 23 of the Introductory Allegations of this Indictment.

A.   OBJECTS OF THE CONSPIRACY

25.   Beginning on December 31, 2011 and continuing through December 17, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant CAI, together with UICC #1 through UICC #7, and others known and unknown to the Grand Jury, knowingly conspired to commit the following offenses:

a.   intentionally trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a)(1); and

b.   intentionally trafficking in counterfeit labels, stickers, documentation, and packaging, in violation of Title 18, United States Code, Section 2320(a)(2).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

26.   The objects of the conspiracy were to be accomplished, in substance, as follows:

a.   Defendant CAI, and UICC #1 through UICC #7, would establish U.S. corporations and bank accounts, as well as accounts at online marketplaces, such as eBay and Amazon, to facilitate the importation and sale of counterfeit lithium-ion batteries for laptop computers, and other electronic accessories for laptop computers and cellular telephones, in the United States.

b.   UICC #1 and other co-conspirators in China (the "Chinese supplier co-conspirators") would arrange to manufacture and export counterfeit lithium-ion batteries for laptop computers, and

1  other electronic accessories for laptop computers and cellular

2  telephones, to defendant CAI in the United States.

3       c.   UICC #1 and the Chinese supplier co-conspirators would

4  package the counterfeit laptop batteries and ship them to the United

5  States, sometimes covering the trademarks with black tape or a

6  similar material, so that a quick inspection of the items would not

7  reveal the trademark.

8       d.   Defendant CAI and employees acting at his direction

9  would, at times, receive shipments of laptop batteries separate from

10 the labels bearing counterfeit marks that were intended for those

11 batteries, so that inspection of the shipments of batteries would not

12 indicate that the batteries were to be fraudulently sold as

13 counterfeit merchandise.  Once the laptop batteries and/or labels

14 arrived at defendant CAI's warehouse, he and employees acting at his

15 direction would add labels bearing counterfeit marks to the laptop

16 batteries, prior to shipping them to purchasers.

17      e.   The counterfeit laptop batteries were advertised and

18 sold via online storefronts, including on eBay and Amazon, where the

19 counterfeit laptop batteries were falsely and fraudulently advertised

20 as brand-name, new, genuine and/or "OEM" (original equipment

21 manufacturer) batteries for laptop computers of various trademarked

22 brands, without indication that the goods were counterfeit and not

23 authorized by the companies whose names and trademarks were used in

24 advertisements and that appeared on the goods and packaging.

25      f.   At other times, defendant CAI and employees acting at

26 his direction, including UICC #7, would sell the laptop batteries and

27 labels bearing counterfeit marks, as well as other counterfeit

28 electronics, to individuals onsite at defendant CAI's warehouse.

1          g.   Defendant CAI and employees acting at his direction

2    would, through U.S. mail and other means, ship counterfeit laptop

3    batteries to victim-purchasers, throughout the United States,

4    including outside the State of California, who had been fraudulently

5    induced by false advertisements to purchase counterfeit laptop

6    batteries.

7          h.   Defendant CAI and employees acting at his direction

8    would typically remove any black tape or similar material covering

9    trademarks prior to shipping the batteries.

10         i.   At times, when a victim-purchaser would discover the

11   counterfeit nature of the laptop batteries and would request a

12   refund, the co-conspirators would accept returns of counterfeit

13   batteries at defendant CAI's warehouse.

14         j.   Defendant CAI and UICC #1, and their co-conspirators,

15   would receive or transfer payments for the counterfeit laptop

16   batteries sold on eBay and Amazon into defendant CAI's Chase Business

17   Accounts, and other U.S. bank accounts.

18         k.   Defendant CAI and UICC #1, and their co-conspirators,

19   would periodically transfer payments from defendant CAI's Chase

20   Business Accounts (a) to bank accounts in China controlled by UICC #1

21   and other co-conspirators; (b) to other of defendant CAI's Chase

22   Business Accounts; and (c) to other bank accounts in the United

23   States used or controlled by defendant CAI and UICC #1, and their co-

24   conspirators, usually in round-dollar quantities, so as to obtain the

25   money and so as to promote the carrying on of the conspiracy.

26         l.   Defendant CAI would further transfer the proceeds to

27   bank accounts in the United States that he used or controlled, and

28   would spend the proceeds of sales of counterfeit laptop batteries on

personal expenses, including for rent, mortgage payments for a
property he purchased, and monthly payments for a Maserati sports car
he leased.

        m.    From on or about March 5, 2014 through on or about
June 20, 2019, defendant CAI and UICC #1, and their co-conspirators,
fraudulently obtained approximately $23,831,668.78 from the sale of
counterfeit laptop batteries through eBay and Amazon, and laundered
those proceeds.  During that time, defendant CAI and UICC #1, and
their co-conspirators, at a minimum laundered approximately
$18,094,960.00 through wire transfers from U.S. bank accounts that
they owned and controlled directly to Chinese bank accounts in the
name of Theseus Technology and other Chinese businesses of the
conspiracy.

C.   OVERT ACTS

    27.  In furtherance of the conspiracy, and to accomplish its
objects, defendant CAI, together with UICC #1 through UICC #7, and
others known and unknown to the Grand Jury, on or about the dates set
forth below, committed and caused to be committed various overt acts,
in the Central District of California and elsewhere, including, but
not limited to, the following:

   Overt Act No. 1:   On or about January 4, 2013, a bank account
ending in 7065 was opened at BOA, in San Gabriel, California, in the
names of UICC #1 and UICC #4, dba "E-Family USA Inc."

   Overt Act No. 2:   On or about September 13, 2013, a bank
account ending in 9983 was opened at Chase, in San Marino,
California, in the name of UICC #6, dba "Wiimart Inc."

   Overt Act No. 3:   On multiple occasions between on or about
March 24, 2014 and on or about September 18, 2014, UICC #1 and

Chinese supplier co-conspirators shipped to defendant CAI's warehouse and his residence counterfeit labels intended for counterfeit laptop batteries, which bore counterfeit marks of Apple, Dell, HP, Toshiba, and UL.

Overt Act No. 4:   On or about March 25, 2014, defendant CAI or an employee acting at his direction shipped, via U.S. mail, a counterfeit laptop battery sold to a customer on eBay bearing a counterfeit HP mark, which was falsely and fraudulently advertised as an "HP Long Life Notebook Battery (HP MU09) Original Genuine OEM."

Overt Act No. 5:   On or about May 2, 2014, defendant CAI and UICC #7 sold ten laptop batteries bearing counterfeit Apple marks to an investigator hired by Apple, acting in an undercover capacity, and UICC #7 admitted that some of the batteries were copies rather than being genuine Apple batteries.

Overt Act No. 6:   On or about June 20, 2014, defendant CAI told a special agent of the Department of Homeland Security, Homeland Security Investigations, acting in an undercover capacity ("UC agent"), that he and UICC #7 sold "copy and original" batteries on May 2, 2014, to the undercover Apple investigator.

Overt Act No. 7:   On or about October 16, 2015, defendant CAI shipped, via U.S. mail, a counterfeit laptop battery sold to a customer on Amazon bearing a counterfeit HP mark, which was falsely and fraudulently advertised as a "MO06 New Original Battery HP DV4-5000 DV6-7000 DV7-7000 DV7t-7000 671731-001."

Overt Act No. 8:   On or about December 21, 2015, defendant CAI shipped, via U.S. mail, a counterfeit laptop battery sold to a customer on eBay bearing a counterfeit HP mark, which was falsely and

fraudulently advertised as a "New Genuine Battery for HP Elitebook 8440WProBook."

Overt Act No. 9:    On or about March 14, 2016, defendant CAI or an employee acting at his direction shipped, via U.S. mail, a counterfeit laptop battery sold to a customer on eBay bearing a counterfeit Apple mark, which was falsely and fraudulently advertised as a "New 45WH Original Battery for Apple MacBook 13.3' 13 Inch A1278 A1280 MB771LL/A."

Overt Act No. 10:    On or about June 21, 2016, the business name "Lelly Q Inc." was registered with the California Secretary of State, listing defendant UICC #1 and defendant CAI as officers of the company, and the address of defendant CAI's warehouse as both of their addresses.

Overt Act No. 11:    On dates in 2015 through 2017, defendant CAI shipped counterfeit batteries sold to victim N.H. through eBay, which batteries were falsely and fraudulently advertised to conceal the fact that they were counterfeit.

Overt Act No. 12:    On or about May 26, 2017, defendant CAI or an employee acting at his direction shipped, via U.S. mail, a counterfeit laptop battery sold to a customer on eBay bearing a counterfeit HP mark, which was falsely and fraudulently advertised as a "NEW OEM ORIGINAL GENUINE HP" laptop battery.

Overt Act No. 13:    On or about August 25, 2017, defendant CAI or an employee acting at his direction shipped, via U.S. mail, a counterfeit laptop battery sold to a customer on Amazon bearing a counterfeit HP mark, which was falsely and fraudulently advertised as an "HP Original."

<u>Overt Act No. 14:</u>   On or about January 15, 2018, defendant CAI or an employee acting at his direction shipped to victim M.O. a counterfeit Toshiba laptop battery sold to M.O. through eBay, which when used in M.O.'s laptop caused the laptop to start smoking and almost catch fire, damaging the charging port.

<u>Overt Act No. 15:</u>   On or about February 2, 2018, defendant CAI offered to UC agents to sell batteries for HP laptops that did not have labels, on which defendant CAI stated he or his employees could add labels bearing HP trademarks.

<u>Overt Act No. 16:</u>   On or about February 2, 2018, defendant CAI sold UC agents 47 counterfeit laptop batteries with labels bearing counterfeit marks for Apple, Dell, HP, and Toshiba.  The Apple batteries had on them a thin layer of clear plastic film, on which small pieces of dark tape covered counterfeit Apple marks.

<u>Overt Act No. 17:</u>   On or after February 5, 2018, defendant CAI or an employee acting at his direction shipped a counterfeit laptop battery that victim F.R. had purchased through eBay, which was falsely and fraudulently advertised as a "New Genuine HP MU06 Original Laptop battery 6-cell 593553-001 593554-001 OEM."

<u>Overt Act No. 18:</u>   On or after March 24, 2018, defendant CAI or an employee acting at his direction shipped a counterfeit laptop battery sold to victim D.A. through eBay, which was falsely and fraudulently advertised as a "New OEM Original Battery for Toshiba Tecra A11 M11 S11 PA3788U-1BRS PA3787U-1BRS."

<u>Overt Act No. 19:</u>   On or after April 20, 2018, defendant CAI or an employee acting at his direction shipped a counterfeit laptop battery sold to victim C.F. through eBay, which was falsely and

fraudulently advertised as a "New Original Battery for Lenovo G460 V360 G560 Z465 L09S6Y02 L09C6Y02 48WH."

Overt Act No. 20:   On or about May 16, 2018, defendant CAI sold to a UC agent 49 counterfeit laptop batteries with labels bearing counterfeit marks of Dell, HP, and Toshiba.

Overt Act No. 21:   On or about May 16, 2018, defendant CAI provided to a UC agent additional, separate labels for counterfeit batteries, which labels bore counterfeit marks of HP.

Overt Act No. 22:   On or about February 28, 2019, defendant CAI sold to a UC agent 108 counterfeit laptop batteries for Apple, Dell, HP, and Toshiba computers, and separate labels bearing counterfeit marks of Apple, Dell, HP, and Toshiba.

Overt Act No. 23:   On or about February 28, 2019, defendant CAI told a UC agent that the Apple marks on the batteries defendant CAI had sold to the UC agent were covered with small stickers, and that the UC agent should remove the thin layers of clear plastic film that were then on the batteries.

COUNT TWO

[18 U.S.C. § 1349]

28.  The Grand Jury re-alleges and incorporates paragraphs 1 through 23 of the Introductory Allegations of this Indictment.

A.  OBJECTS OF THE CONSPIRACY

29.  Beginning on December 9, 2011 and continuing through December 17, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant CAI, together with UICC #1 through UICC #7, and others known and unknown to the Grand Jury, knowingly conspired to commit the following offenses:

a.  wire fraud, in violation of Title 18, United States Code, Section 1343; and

b.  mail fraud, in violation of Title 18, United States Code, Section 1341.

B.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

30.  The objects of the conspiracy were to be accomplished, in substance, as follows:

a.  The Grand Jury re-alleges and incorporates paragraphs 26.a through 26.m of Section B of Count One of this Indictment.

C.  OVERT ACTS

31.  In furtherance of the conspiracy, and to accomplish its objects, defendant CAI, together with UICC #1 through UICC #7, and others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

     Overt Act Nos. 1-23:   The Grand Jury re-alleges and incorporates Overt Act Number 1 through Overt Act Number 23 of Section C of Count One of this Indictment.

COUNT THREE

[18 U.S.C. § 1956(h)]

32.  The Grand Jury re-alleges and incorporates paragraphs 1 through 23 of the Introductory Allegations of this Indictment.

A.   OBJECTS OF THE CONSPIRACY

33.  Beginning on December 9, 2011, and continuing through December 17, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant CAI, together with UICC #1 through UICC #7, and others known and unknown to the Grand Jury, knowingly conspired to commit the following offenses:

a.   to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, funds from a place in the United States to a place outside of the United States, with the intent to promote the carrying on of specified unlawful activity -- namely, trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a)(1); wire fraud, in violation of Title 18, United States Code, Section 1343; and mail fraud, in violation of Title 18, United States Code, Section 1341 -- in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

b.   to engage and attempt to engage in monetary transactions involving criminally derived property of a value greater than $10,000, affecting interstate and foreign commerce, which was derived from specified unlawful activity -- namely, trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a)(1); wire fraud, in violation of Title 18, United States Code, Section 1343; and mail fraud, in violation of Title 18, United States Code, Section 1341 -- and knowing that the funds

represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

B.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

 34.  The objects of the conspiracy were to be accomplished, in substance, as follows:

  a.  The Grand Jury re-alleges and incorporates paragraphs 26.a through 26.m of Section B of Count One of this Indictment.

C.  OVERT ACTS

 35.  In furtherance of the conspiracy, and to accomplish its objects, defendant CAI, together with UICC #1 through UICC #7, and others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act Nos. 1-23:  The Grand Jury re-alleges and incorporates Overt Act Number 1 through Overt Act Number 23 of Section C of Count One of this Indictment.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 2323(b) and 28 U.S.C. § 2461(c)]

1.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 2323(b) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in Count One of this Indictment.

2.  The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any article made or trafficked in violation of 18 U.S.C. § 2320;

(b)  All right, title, and interest in any property used, or intended to be used, in any manner or part to commit or facilitate the commission of an offense referred to in subparagraph (a);

(c)  All right, title, and interest in any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of an offense referred to in subparagraph (a), including, without limitation: the real property located in Rancho Cucamonga, California 91739, Assessor's Parcel Number 0229-481-34-0-000, titled in the name of Zoulin Cai, a single man; and

(d)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 2323(b)(2) and Title 28, United States Code, Section 2461(c), the defendant, if

so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in Count Two of this Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses including, without limitation: the real property located in Rancho Cucamonga, California 91739, Assessor's Parcel Number 0229-481-34-0-000, titled in the name of Zoulin Cai, a single man; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

24

1   substantially diminished in value; or (e) has been commingled with
2   other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in Count Three of this Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   Any property, real or personal, involved in such offense, and any property traceable to such property including, without limitation: the real property located in Rancho Cucamonga, California 91739, Assessor's Parcel Number 0229-481-34-0-000, titled in the name of Zoulin Cai, a single man; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be

26

divided without difficulty.  Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

/S/
_____
Foreperson

TRACY L. WILKISON
Attorney for the United States,
Acting Under Authority Conferred
   by 28 U.S.C. § 515

PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division

RYAN WHITE
Assistant United States Attorney
Chief, Cyber & Intellectual
   Property Crimes Section

CAMERON L. SCHROEDER
Assistant United States Attorney
Deputy Chief, Cyber &
   Intellectual Property Crimes
   Section

ANIL J. ANTONY
JULIA S. CHOE
Assistant United States Attorneys
Cyber & Intellectual Property
   Crimes Section