UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 2:19-CR-00761-JFW-1 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| ZOULIN CAI, | ) | Monday, December 23, 2019 |
| | ) | |
| Defendant. | ) | (2:12 p.m. to 2:27 p.m.) |

DETENTION HEARING

BEFORE THE HONORABLE JOHN E. MCDERMOTT,
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**

For Plaintiff:         JULIE S. CHOE, ESQ.
                       United States Attorney's Office
                       312 North Spring Street
                       Los Angeles, CA 90012

For Defendant:         JULIA DEIXLER, ESQ.
                       Federal Public Defender's Office
                       321 East 2nd Street
                       Los Angeles, CA 90012

Mandarin Interpreter:  Yanyan Liu

U.S. Pretrial Services: Leslie Crews

Court Reporter:        Recorded; CourtSmart

Courtroom Deputy:      Sharon Lorenzo

Transcribed by:        Exceptional Reporting Services, Inc.
                       P.O. Box 8365
                       Corpus Christi, TX 78468
                       361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**Los Angeles, California; Monday, December 23, 2019; 2:12 p.m.**

**(Call to Order)**

**(Official Interpreter Utilized for Translation)**

**THE CLERK:** Calling Case Number CR-19-761, *United States of America versus Zoulin Cai*. Counsel, please state your appearances.

**MS. CHOE:** Good afternoon, your Honor, Julia Choe on behalf of the United States.

**MS. DEIXLER:** Good afternoon, your Honor, Deputy Federal Public Defender Julia Deixler on behalf of Zoulin Cai. He is present in custody and being assisted by a Mandarin language interpreter.

**THE COURT:** Would the Mandarin interpreter identify herself for the record?

**INTERPRETER LIU:** Good afternoon, your Honor, the court's certified Mandarin interpreter Yanyan Liu.

**THE COURT:** Mr. Cai, do you understand the Mandarin translation being provided to you today?

**THE DEFENDANT:** Yes.

**THE COURT:** Okay. This is a carryover from Judge Audero's calendar last week. I take it everything was done except for bail, right?

**MS. DEIXLER:** That's correct, your Honor.

**MS. CHOE:** Your Honor, there was -- in the sense that there was no determination made and there is an updated

1  Pretrial Services Report today.
2          **THE COURT:** Right. Yes, I've read it.
3          **MS. CHOE:** So, yes. Yes, it's the only remaining
4  instrument.
5          **THE COURT:** All right. The Government is still
6  seeking detention?
7          **MS. CHOE:** That's correct.
8          **MS. DEIXLER:** Thank you, your Honor. The Defense is
9  requesting a bond. There is some additional information
10 regarding sureties that did not make it into the Pretrial
11 Services Report but that the Pretrial officer in the courtroom
12 was just able to verify with the sureties that are present in
13 court today.
14         The Defense would propose as sureties two friends of
15 Mr. Cai who live in the Los Angeles area and are present in
16 court today. Their names are Rosanne (phonetic) Chen
17 (phonetic) and Tiang (phonetic) Jiang (phonetic). They are --
18 our proposal would be that they would make a 20,000-dollar cash
19 deposit and each is also willing to sign an appearance bond on
20 behalf of Mr. Cai.
21         I also personally spoke with another friend of his
22 named Daniel Wu (phonetic) who's not present in the court and
23 who I understand Pretrial Services was not able to get in
24 contact with today but his representation to me was that he's
25 also willing to sign an appearance bond for Mr. Cai.

1    I would also note -- I do disagree with the
2    characterization of Mr. Cai's property in the updated Pretrial
3    Services Report.  The initial recommendation by Pretrial
4    Services on last Thursday was that Mr. Cai be released on a
5    bond signed by himself and then also secured by the property
6    that he owns in Rancho Cucamonga.  The updated version of the
7    report indicates that the Government represented to Pretrial
8    Services that it was seizing that property.  I don't think
9    that's quite an accurate description.  The property is the
10   subject of a forfeiture allegation in the indictment but, of
11   course, there's only been charges made at this point.
12        The Government does not actually have any right to
13   seize the property.  The charges have not been proven at this
14   stage.  We --
15        **THE COURT:**  But it has implications for its
16   usefulness as bond.
17        **MS. DEIXLER:**  Certainly and I understand that.  But
18   he still does have right and title to the property.  The
19   Government does not have title to the property.  It's not
20   seized.  So I do still think it is available as an asset.  I
21   understand --
22        **THE COURT:**  Well, that's -- I'm not sure that's true
23   that it's available to -- as an asset if it's identified in the
24   indictment as a property he owns or is in the process of -- or
25   there's a charge against it for purposes of forfeiture

1  potentially.

2  **MS. DEIXLER:**  Yes, your Honor.

3  **THE COURT:**  It's like it has a lien against it or a
4  preliminary injunction against it.  I don't know how it's
5  available for bond.

6  **MS. DEIXLER:**  Well, I don't think it's quite the same
7  as a lien.  You know, the Government has filed a lis pendens
8  which is essentially just a notice.  It's on the record that it
9  is the subject of litigation but the bond would be exonerated
10 upon the completion of the case.  So if Mr. Cai was ultimately
11 convicted of the charges and if the Government were ultimately
12 able to prove the forfeiture allegation, that would be the same
13 time that the bond would be exonerated.

14         So I think during the pendency of the trial before
15 the Government has proven its right to the property, it would
16 technically be available as a bond resource.  I understand the
17 Court's potential concern that it might be a less valuable bond
18 resource but nonetheless I do think if the Court wishes to
19 impose that as a condition of bond, it does have the authority
20 to do so.  And then additionally, we're proposing the
21 additional secured bond of a 20,000-dollar cash deposit from
22 his friends.

23         Certainly, I don't think the Government in its
24 request for detention has made any statement about Mr. Cai's
25 dangerousness to the community.  I really think -- so unless

1  the Court wants me to address that point, I'll move on to
2  flight.  But as the Court can see from the Pretrial Services
3  Report, he has no criminal history.
4         **THE COURT:**  Well, my -- I thought I had read
5  somewhere here that the -- I may be confusing it with another
6  case.
7         Pretrial Services, are you present here?
8         **MS. PRETRIAL SERVICES OFFICER CREWS:**  Yes, your
9  Honor.
10        **THE COURT:**  What's your name?
11        **MS. PRETRIAL SERVICES OFFICER CREWS:**  Leslie Crews.
12        **THE COURT:**  Okay.  You've vetted the sureties that
13 have been proposed?
14        **MS. PRETRIAL SERVICES OFFICER CREWS:**  Yes, your
15 Honor.  I was able to speak with Tiang Jiang who is willing to
16 agree to a cash deposit, in total a 20,000-dollar amount
17 between Tiang Jiang and also Roseanne Chen.  She's also willing
18 to agree to an unsecured appearance bond as well in the amount
19 of $20,000.  And I also spoke --
20        **THE COURT:**  The updated report says that you're
21 recommending detention based on risk of nonappearance, correct?
22        **MS. PRETRIAL SERVICES OFFICER CREWS:**  Yes, your
23 Honor.
24        **THE COURT:**  And notwithstanding this information
25 subsequent to the updated report, that's still your position or

1 not?

2 **MS. PRETRIAL SERVICES OFFICER CREWS:** Pretrial
3 Services would continue to recommend detention.

4 **THE COURT:** All right. Now let's hear from the
5 Government.

6 **MS. CHOE:** Yes, your Honor. As the Court is aware,
7 the initial Pretrial Services Report in this case did think
8 that the property was available as a secured property that
9 could be a secured bond for this Defendant. That obviously is
10 not the case. The Government has filed a lis pendens on that
11 property. It is the subject of forfeiture in this case. It is
12 simply not available as property that the Defendant can give
13 up.

14 In terms of flight risk, I think the real main danger
15 here is that the Defendant may be an LPR but he is here on
16 asylum. Despite that fact and as is set forth in Paragraph 35
17 of the search warrant affidavit that the Government had
18 previously given to the Court, this Defendant has admitted that
19 he travels back to China on a yearly basis.

20 The Pretrial Services Report has acknowledged that he
21 has a Chinese passport and in the past five years has traveled
22 to China, to Mexico, to Dubai and to Canada. And even more
23 troubling, when this Defendant comes back from China, he
24 appears to be coming back through Canada likely in an effort to
25 evade immigration because he is here on asylum. He is not

1  supposed to be going back to the country that he is seeking
2  asylum from.  So that's a very serious flight risk.
3        Additionally, this Defendant has family ties, not to
4  this district but to China.  His family, including his parents
5  and his two sisters, are located in China.  He does not appear
6  to have significant ties to this community and he appears to
7  basically have come here to perpetrate this fraud and as the
8  indictment makes clear, his work here is to import counterfeit
9  batteries and sell them to unsuspecting United States
10 customers, some of whom have received batteries that once they
11 plug in their laptop, it actually causes the laptop charger to
12 melt and start smoking.  So not only is that, I think, an
13 economic danger but also just goes to the danger to consumers.
14       Next, I think there's a real issue with resources
15 here.  The Defendant here, while he says that he is a worker in
16 the warehouse, he actually kind of owns that warehouse and
17 operates it.  As the indictment makes clear in the money
18 laundering allegations, this Defendant has obtained
19 approximately $23.5 million selling these batteries and then
20 has taken that money and has laundered that money through a
21 variety of bank accounts that are operated under a variety of
22 company names, all of which tie back to the Defendant.
23       That goes to show that this Defendant is financially
24 sophisticated and possibly has access to large sums of
25 resources that the Government believes he could and would use

1 to leave the country, especially given that he seems to do so
2 every year despite being on asylum from China.
3 　　　　　And when it goes to -- as it goes to the additional
4 sureties today, I think that Pretrial Services was right in
5 their initial recommendations here when they believe that a
6 property or something that substantial is necessary to outweigh
7 the flight risks here.  What the Defendant is offering now are
8 simply cash signatories by friends who -- at least one of them
9 says they have no idea what this Defendant does and seems to
10 have no idea what this case is about.  And I just don't think
11 that those -- are they relatively small relative to the scale
12 of this case and the amount of money that the Defendant was
13 taking in?  I just don't think that outweighs the risk of
14 flight.
15 　　　　　**THE COURT:**  All right.
16 　　　　　**MS. DEIXLER:**  If I may respond, your Honor.
17 　　　　　**THE COURT:**  Go ahead.
18 　　　　　**MS. DEIXLER:**  Thank you.  Several points, I mean,
19 first, I would just reiterate my point.  I don't think it's
20 accurate to say that the property is unavailable.  I won't
21 repeat my arguments but that continues to be my position.
22 　　　　　The -- I believe that the counsel for the Government
23 just stated something to the effect that this Defendant has
24 obtained $24 million selling batteries.  I think that is a
25 wildly inaccurate statement.

1    In our pre -- in our trial-setting conference this
2 morning, the Government laid out in very specific detail all of
3 the other people that are involved and are described as
4 unindicted co-conspirators in this case who are actually
5 running the shipment of batteries from China into the United
6 States according to the Government's allegations and who are
7 managing the online accounts and what the representation in
8 court this morning was, is that the vast majority of the money
9 is returned to China and is not given to Mr. Cai.  Mr. Cai
10 earns a salary --
11    **THE COURT:**  Well, what --
12    **MS. DEIXLER:**  -- from the company.
13    **THE COURT:**  -- I thought the allegation was it was --
14 the money was returned to China to the Defendant's family
15 there.
16    **MS. DEIXLER:**  To the unindicted co-conspirators.
17 It's not money that Mr. Cai has access to.  It's for purposes
18 of --
19    **THE COURT:**  I'm not talking about Mr. Cai.  I'm
20 talking about it going to his family in China.  That's part of
21 the allegation, isn't it?
22    **MS. DEIXLER:**  Well, I think the allegation is that it
23 goes to the individuals that the Government claims are
24 operating the business, some of which are family members of
25 Mr. Cai.

1 **THE COURT:** In China?

2 **MS. DEIXLER:** Correct.

3 **THE COURT:** Okay.

4 **MS. DEIXLER:** But it is -- but those individuals -- I believe from my understanding of the case thus far, it's those individuals that are actually controlling the company. It's not Mr. Cai. Mr. Cai earns a salary from that company and he also has other -- another legitimate source of income that was noted in the financial affidavit for his own company that has nothing to do with laptop batteries. It has nothing to do with these other individuals in China.

And so for purposes of considering his flight risk, I raise this not to challenge the allegations or the substance of the case at this point because I don't think I have enough information to do so but for purposes of a flight risk, I think Mr. Cai's assets are far below what the Government is asserting here. He certainly doesn't have access to that $24 million and I think that the Government has already conceded that just a small portion of that money has gone to his account.

Further, he does have a valid Chinese passport. That passport has been seized by Federal authorities. He will file a declaration with the court indicating that he will not apply for new travel documents. So I don't see how he will travel to China without a passport. I also think the Court can impose stringent conditions to assure his appearance which could

1 include location monitoring. It could include home detention.
2 It would include, certainly, close supervision by a Pretrial
3 Services officer and potentially search conditions to confirm
4 that he's complying with his conditions.
5      So I don't -- in a case where there's no -- where the
6 Government has not shown any danger, the burden is on the
7 Government to show a serious risk that the Defendant will flee
8 and I don't see that present here. It is true that his family
9 is in China. He has lived in the Los Angeles area for seven
10 years. He's lived at the current home that he's in, I believe,
11 for five years.
12      He does have a close-knit community of friends who
13 are here in court today who came to the hearing earlier this
14 morning who I've personally spoken to at length who are
15 actually very involved in this case and trying to assist him in
16 any way that they can. And they are -- they do understand the
17 seriousness of the allegations and they're, nevertheless,
18 willing to put $20,000 on the line, not just as a signature
19 bond but actually cash deposit to be held by the court for the
20 duration of this case.
21      **THE COURT:** Right.
22      **MS. DEIXLER:** So I do think that is a significant
23 offer from these individuals who do have the financial means to
24 do this and are willing to support Mr. Cai. He has -- I think
25 that by the end of this case, the evidence will show that he

1  had a relatively less significant role in the Government's
2  allegations than those individuals in China.  And he doesn't
3  pose a danger to the community because of those.  He's not
4  going to continue to work for this business.  Certainly the
5  Court can impose that as a condition and without his travel
6  documents, I don't see him fleeing to China.
7      **THE COURT:**  Okay.  Anything further from the
8  Government?
9      **MS. CHOE:**  No, your Honor.  No, your Honor.
10     **THE COURT:**  The Court's going to deny bail.  One way
11 or another, this Defendant could make his way back to China
12 where his family is.  I don't think their bail resources are
13 significant enough to offset the flight risk.  So the Court's
14 going to deny bail on risk of nonappearance but not danger to
15 the community.
16     **MS. CHOE:**  Thank you, your Honor.
17     **THE CLERK:**  Court is in recess.
18     **(Proceeding adjourned at 2:27 p.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                              June 11, 2020
        Signed                                              Dated

*TONI HUDSON, TRANSCRIBER*