TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, Criminal Division
KHALDOUN SHOBAKI (Cal. Bar No. 232864)
Assistant United States Attorney
Deputy Chief, Cyber & I.P. Crimes Section
JULIA S. CHOE (Cal. Bar No. 287038)
Assistant United States Attorney
Deputy Chief, General Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0759/6530
    Facsimile: (213) 894-2927
    E-mail:   khaldoun.shobaki@usdoj.gov
              julia.choe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:19-00761-JFW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT ZOULIN CAI |
| v. | |
| ZOULIN CAI,<br>   aka "Zou Lin Cai,"<br>   aka "Lin Cai,"<br>   aka "Allen Cai," | |
| Defendant. | |

    1.   This constitutes the plea agreement between ZOULIN CAI, also known as ("aka") "Zou Lin Cai," aka "Lin Cai," aka "Allen Cai" ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

1
<u>DEFENDANT'S OBLIGATIONS</u>

2
2.   Defendant agrees to:

3
a.   At the earliest opportunity requested by the USAO and

4
provided by the Court, appear and plead guilty to count two and count

5
nine of the first superseding indictment in <u>United States v. Zoulin</u>

6
<u>Cai</u>, CR No. 2:19-00761-JFW, which charge defendant with Conspiracy to

7
Commit Wire Fraud and Mail Fraud in violation of 18 U.S.C. § 1349,

8
and Aggravated Identity Theft in violation of 18 U.S.C.

9
§ 1028A(a)(1).

10
b.   Not contest facts agreed to in this agreement.

11
c.   Abide by all agreements regarding sentencing contained

12
in this agreement.

13
d.   Appear for all court appearances, surrender as ordered

14
for service of sentence, obey all conditions of any bond, and obey

15
any other ongoing court order in this matter.

16
e.   Not commit any crime; however, offenses that would be

17
excluded for sentencing purposes under United States Sentencing

18
Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

19
within the scope of this agreement.

20
f.   Be truthful at all times with the United States

21
Probation and Pretrial Services Office and the Court.

22
g.   Pay the applicable special assessments at or before

23
the time of sentencing unless defendant has demonstrated a lack of

24
ability to pay such assessments.

25
h.   Defendant further agrees to the entry as part of

26
defendant's guilty plea of a personal money judgment of forfeiture

27
against defendant in the amount of $332,500, which sum defendant

28
admits was derived from proceeds traceable to the violations

2

described in the factual basis.  Defendant understands that the money judgment of forfeiture is part of defendant's sentence and is separate from any fines or restitution that may be imposed by the Court.

i.    With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the money judgment of forfeiture in any proceeding on any grounds including, without limitation, that the money judgment of forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that entry of the money judgment of forfeiture is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

j.    Defendant agrees to the abandonment to the United States of any interest of the defendant in the following items seized by law enforcement on or about the dates listed:

i.    10 batteries (5/2/2014);

ii.   1 battery (10/16/2015);

iii.  1 battery (12/21/2015);

iv.   1 battery (3/14/2016);

v.    1 battery (5/26/2017);

1                  vi.  1 battery (8/25/2017);

2                  vii. 47 batteries (2/2/2018);

3                  viii.   49 batteries (5/16/2018);

4                  ix.  5 labels (5/16/2018);

5                  x.   108 batteries (2/28/2019);

6                  xi.  175,385 labels (12/19/2019);

7                  xii. 1,296 power supplies (12/19/2019); and

8                  xiii.   44,362 batteries (12/19/2019) (collectively,

9 the Seized Items).

10       k.    Defendant acknowledges that to the best of his

11 knowledge, he is the sole owner of the Seized Items and that no other

12 person or entity has an interest in the Seized Items.  Defendant

13 agrees to complete any legal documents required for the transfer of

14 title of the Seized Items to the United States.

15                   THE USAO'S OBLIGATIONS

16    3.    The USAO agrees to:

17       a.    Not contest facts agreed to in this agreement.

18       b.    Abide by all agreements regarding sentencing contained

19 in this agreement.

20       c.    At the time of sentencing, move to dismiss the

21 remaining counts of the first superseding indictment as against

22 defendant.  Defendant agrees, however, that at the time of sentencing

23 the Court may consider any dismissed charges in determining the

24 applicable Sentencing Guidelines range, the propriety and extent of

25 any departure from that range, and the sentence to be imposed.

26       d.    At the time of sentencing, provided that defendant

27 demonstrates an acceptance of responsibility for the offenses up to

28 and including the time of sentencing, recommend a two-level reduction

in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. § 1546 based on evidence of asylum or visa fraud located during the search warrants executed on or about December 19, 2019 at defendant's home and warehouse.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

f.   With respect to count two, recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 24 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSES</u>

4.  Defendant understands that for defendant to be guilty of the crime charged in count two, that is Conspiracy to Commit Wire

Fraud and Mail Fraud in violation of Title 18, United States Code, Section 1349, the following must be true:  First, there was an agreement between two or more persons to commit wire fraud in violation of Title 18, United States Code, Section 1343 and mail fraud in violation of Title 18, United States Code, Section 1341. Second, defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

5.   Defendant understands that for defendant to be guilty of the crime charged in count nine, that is Aggravated Identity Theft in violation of Title 18, United States Code, Section 1028A(a)(1), the following must be true:  First, that defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person.  Second, that defendant knew the means of identification belonged to a real person.  Third, that the defendant did so during and in relation to Conspiracy to Commit Wire Fraud and Mail Fraud.

<u>PENALTIES AND RESTITUTION</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 20 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Codes, Section 1028A(a)(1) is: two years imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross

gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 22 years imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

9.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in count nine of the first superseding indictment, is a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

10.   Defendant understands that he will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties agree that the

applicable amount of restitution is at least $3.5 million, but the parties dispute the amount of restitution and agree that the Court will resolve that issue prior to sentencing. Defendant understands that the government believes that the applicable restitution is at least $23,831,688.78. The defense disputes this amount. The parties recognize and agree that the amount could change based on facts that come to the attention of the parties prior to sentencing.

11. Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

12. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or

ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty

1   to the charges described in this agreement and to establish the

2   Sentencing Guidelines factors set forth in paragraph 17 below but is

3   not meant to be a complete recitation of all facts relevant to the

4   underlying criminal conduct or all facts known to either party that

5   relate to that conduct.

6       Defendant agreed with one or more of the persons identified in

7   the first superseding indictment as unindicted coconspirator ("UICC")

8   #1 through UICC #7, or other coconspirators not identified in the

9   first superseding indictment (collectively, with UICC #1 through UICC

10  #7, the "coconspirators"), to import batteries, labels for batteries

11  for laptop computers and cellular phones, and other electronics from

12  China to the United States that were manufactured by the

13  coconspirators in China.  Once these products arrived in the United

14  States, defendant would ship them to victims who purchased them

15  through online marketplaces, such as Amazon and eBay, where they were

16  advertised by coconspirators to be new, genuine, original, and

17  original equipment manufacturer ("OEM") products, including of Apple

18  Inc. ("Apple"), Dell Inc. ("Dell"), Hewlett-Packard Company ("HP"),

19  Toshiba Corporation ("Toshiba"), Acer, Inc. ("Acer"), AsusTek

20  Computer Inc. ("Asus"), International Business Machines Corporation,

21  Lenovo Group Limited ("Lenovo"), and Samsung Group ("Samsung").  Many

22  of the batteries and electronics also bore fraudulent certification

23  marks of UL LLC ("UL").  Defendant knew or was aware of a high

24  probability that the batteries and electronics he shipped were

25  counterfeit and bore counterfeit marks of the above-named

26  manufacturers and UL, rather than being genuine, brand-name batteries

27  and electronics, and deliberately avoided learning the truth.

28  Defendant joined the conspiracy in or around September 2017,

intending to help accomplish the objects of the conspiracy, which
included the distribution of counterfeit batteries.  When he joined
the conspiracy, defendant knew or was aware of a high probability
that the batteries were counterfeit, and deliberately avoided
learning the truth.  From at least March 2014 through December 19,
2019, defendant imported, sold, and shipped batteries and electronics
from warehouses in La Puente, California.  The specific operation of
the conspiracy is discussed in more detail below:

Defendant, at the direction of his coconspirators, established
U.S. corporations to facilitate the importation and sale of
counterfeit lithium-ion batteries and other electronic accessories
for laptop computers and cellular telephones.  Specifically,
defendant and his coconspirators established corporate entities,
which they registered with the Secretary of the State of California,
using the business names "3C Supply Inc.," "Cycle Technology Inc.,"
"E-Family USA Inc.," "Electronic Mall Inc.," "E-Mall International
Inc.," "Everlast Group Inc.," "Green Tech International Group Inc.,"
"Lelly Q Inc.," "Nana Inc.," and "Wiimart Inc."  Defendant possessed
corporate documents in the name of coconspirators, and some of these
entities, at the time of his arrest on December 19, 2019.

For some of these corporate entities, defendant established U.S.
bank accounts within the Central District of California.  Defendant
admits and agrees that the bank accounts listed in paragraphs 10 to
12 of the first superseding indictment were among the business bank
accounts that defendant and the coconspirators established and used.
Defendant possessed bank cards in the names of multiple
coconspirators at the time of his arrest, including, without
limitation, UICC #3, UICC #4, and UICC #5.

11

1    Coconspirators in China packaged counterfeit batteries and
2  electronics and shipped them to the United States, sometimes covering
3  the trademarks with black tape or a similar material, so that a quick
4  inspection of the items by U.S. Customs and Border Protection
5  ("Customs") would not reveal the trademark.  Additionally, the
6  Chinese coconspirators, at times, shipped batteries separate from the
7  labels bearing counterfeit marks that were intended for those
8  batteries, so that inspection of the shipments of batteries would not
9  indicate to Customs that the batteries were to be fraudulently sold
10  as counterfeit merchandise.

11    Once the batteries and labels arrived at defendant's warehouse,
12  defendant and employees acting at his direction added labels bearing
13  counterfeit marks to the batteries, prior to shipping them to
14  purchasers.  Defendant and these employees also removed black tape or
15  similar material that had been covering trademarks prior to shipping
16  the products.

17    Defendant -- who knew or was aware of a high probability that
18  the batteries and other electronics were counterfeit, and
19  deliberately avoided learning the truth -- would ship them, or direct
20  employees to ship them, to U.S. consumers who purchased them on
21  Amazon and eBay through a variety of seller names operated by
22  defendant and his coconspirators, including the eBay seller names
23  "e4better," "auspicious2012," "kaiwehk2014," "efamilyinc,"
24  "batteries2013us," "yca-shop," "e-powermart," "techstore6," "bestbuy-
25  i," and "poststation"; and the Amazon seller names "amazpower";
26  "auinto," "e-mall," "greenemart," "wicoo," "wondermart," and "top-
27  elecmart."  Defendant also shipped or directed employees to ship
28  batteries sold under Amazon seller names "prime maxx" and

"simplysilver" from defendant's warehouse.  When a victim-purchaser discovered the counterfeit nature of the batteries and requested a refund, defendant accepted returns of batteries at his warehouse.  On occasion, customers complained that the batteries defendant shipped had damaged their property, such as a laptop computer.  The individuals identified as victims M.O., N.H., F.R., D.A., and C.F. in the first superseding indictment were among the purchasers of batteries supplied by defendant.

Defendant received or transferred payments for the laptop batteries sold on eBay and Amazon into defendant's Chase Business Accounts (identified in first superseding indictment, paragraph 10-10.g), and other U.S. bank accounts.  Defendant periodically transferred payments from defendant's Chase Business Accounts (a) to bank accounts in China controlled by coconspirators; (b) to other of defendant's Chase Business Accounts; and (c) to other bank accounts in the United States used or controlled by defendant and coconspirators.  Defendant also spent funds on personal expenses, including rent payments, mortgage payments, and monthly payments for a Maserati sports car he leased.

Defendant understands and agrees that at the time of sentencing, the Court may consider the uncharged conduct or conduct relevant to dismissed counts in determining the applicable Sentencing Guidelines range.  Such conduct includes that from on or about March 5, 2014 through on or about June 20, 2019, defendant and his coconspirators fraudulently obtained approximately at least $3,500,000, and as much as $23,831,668.78 from the sale of laptop batteries through eBay and Amazon.  During that time, defendant and the coconspirators sent approximately $18,094,960.00 through wire transfers from U.S. bank

accounts that they owned and controlled directly to Chinese bank accounts.

On December 19, 2019, defendant's warehouse (including containers on the premises) contained approximately 44,000 batteries, as well as approximately 175,000 labels, bearing the counterfeit marks of a number of companies, including Apple, Dell, HP, Toshiba, Lenovo, Asus, Acer, and Samsung.

On December 19, 2019, and at other times, defendant possessed and used without legal authority the means of identification of another person, including but not limited to UICC #3 and UICC #5. Defendant knew that the means of identification that he possessed, including those of UICC #3 and UICC #5, belonged to real persons. Defendant possessed and used the means of identification of UICC #3 and UICC #5, including possessing debit cards in their names, during and in relation to his participation in the fraud conspiracy. Specifically, the debit card in the name of UICC #3 was a card for 3C Supply Inc., while the debit card in the name of UICC #5 was a card for Everlast Group Inc.; both companies were among those used by defendant and his coconspirators to distribute the counterfeit batteries.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

14

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

17.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors with respect to count two:

| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| 10 or more victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |

The parties further agree that the loss is more than $3,500,000, corresponding to the application of +18 (U.S.S.G. § 2B1.1(b)(1)(J)). The USAO reserves the right to argue at sentencing that the loss is greater, up to and including an amount that would lead to the application of U.S.S.G. § 2B1.1(b)(1)(L).  Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that the Court must sentence defendant to a term of two years imprisonment on count nine, which must run consecutive to any term of imprisonment imposed for count two.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

1

## WAIVER OF CONSTITUTIONAL RIGHTS

2    20.  Defendant understands that by pleading guilty, defendant

3  gives up the following rights:

4          a.   The right to persist in a plea of not guilty.

5          b.   The right to a speedy and public trial by jury.

6          c.   The right to be represented by counsel -- and if

7  necessary have the Court appoint counsel -- at trial.  Defendant

8  understands, however, that, defendant retains the right to be

9  represented by counsel -- and if necessary have the Court appoint

10 counsel -- at every other stage of the proceeding.

11         d.   The right to be presumed innocent and to have the

12 burden of proof placed on the government to prove defendant guilty

13 beyond a reasonable doubt.

14         e.   The right to confront and cross-examine witnesses

15 against defendant.

16         f.   The right to testify and to present evidence in

17 opposition to the charges, including the right to compel the

18 attendance of witnesses to testify.

19         g.   The right not to be compelled to testify, and, if

20 defendant chose not to testify or present evidence, to have that

21 choice not be used against defendant.

22         h.   Any and all rights to pursue any affirmative defenses,

23 Fourth Amendment or Fifth Amendment claims, and other pretrial

24 motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

26    21.  Defendant understands that, with the exception of an appeal

27 based on a claim that defendant's guilty pleas were involuntary, by

28 pleading guilty defendant is waiving and giving up any right to

appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

22.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 87 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $25,000,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

23.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly

retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

24.  The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 75 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $23,831,668.78.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

25.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such

1  action, except to the extent that such defenses existed as of the

2  date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

3

4  26.  This agreement is effective upon signature and execution of

5  all required certifications by defendant, defendant's counsel, and an

6  Assistant United States Attorney.

BREACH OF AGREEMENT

7

8  27.  Defendant agrees that if defendant, at any time after the

9  signature of this agreement and execution of all required

10  certifications by defendant, defendant's counsel, and an Assistant

11  United States Attorney, knowingly violates or fails to perform any of

12  defendant's obligations under this agreement ("a breach"), the USAO

13  may declare this agreement breached.  All of defendant's obligations

14  are material, a single breach of this agreement is sufficient for the

15  USAO to declare a breach, and defendant shall not be deemed to have

16  cured a breach without the express agreement of the USAO in writing.

17  If the USAO declares this agreement breached, and the Court finds

18  such a breach to have occurred, then: (a) if defendant has previously

19  entered guilty pleas pursuant to this agreement, defendant will not

20  be able to withdraw the guilty pleas, and (b) the USAO will be

21  relieved of all its obligations under this agreement.

22  28.  Following the Court's finding of a knowing breach of this

23  agreement by defendant, should the USAO choose to pursue any charge

24  or any civil, administrative, or regulatory action that was either

25  dismissed or not filed as a result of this agreement, then:

26  a.  Defendant agrees that any applicable statute of

27  limitations is tolled between the date of defendant's signing of this

28  agreement and the filing commencing any such action.

19

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of

sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

*/s/ Julia S. Choe*                                    *6/25/2021*
_____          _____
KHALDOUN SHOBAKI / JULIA CHOE              Date
Assistant United States Attorneys

Zoulin Cai                                           6/25/2021
_____          _____
ZOULIN CAI                                 Date
Defendant

_____          6/25/2021
SAMUEL JOSEPHS / CHRISTA WASSERMAN         Date
Attorney for Defendant ZOULIN CAI


CERTIFICATION OF DEFENDANT

This agreement has been read to me in Mandarin / Mandarin (Sichuan Dialect), the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences

22

1  of entering into this agreement.  No promises, inducements, or

2  representations of any kind have been made to me other than those

3  contained in this agreement.  No one has threatened or forced me in

4  any way to enter into this agreement.  I am satisfied with the

5  representation of my attorney in this matter, and I am pleading

6  guilty because I am guilty of the charges and wish to take advantage

7  of the promises set forth in this agreement, and not for any other

8  reason.

9   _Zoulin Cai_ _____     _6/25/2021_ _____

10  ZOULIN CAI                              Date
    Defendant

11

12

13             CERTIFICATION OF INTERPRETER

14      I, _Dorothy Hu_, am fluent in the written and spoken English

15  and Mandarin / Mandarin (Sichuan Dialect) languages.  I accurately

16  translated this entire agreement from English into Mandarin /

17  Mandarin (Sichuan Dialect) to defendant ZOULIN CAI on this date.

18  _____     _6/25/2021_ _____

19  INTERPRETER                            Date

20

21

22          CERTIFICATION OF DEFENDANT'S ATTORNEY

23      I am ZOULIN CAI's attorney.  I have carefully and thoroughly

24  discussed every part of this agreement with my client.  Further, I

25  have fully advised my client of his rights, of possible pretrial

26  motions that might be filed, of possible defenses that might be

27  asserted either prior to or at trial, of the sentencing factors set

28  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set
forth in this agreement is sufficient to support my client's entry of
guilty pleas pursuant to this agreement.

_____        _4/25/2021_____
SAMUEL JOSEPHS / CHRISTA WASSERMAN        Date
Attorneys for Defendant ZOULIN CAI